**GAF CORPORATION, a Delaware Corporation, Appellant,**

v.

**COUNTY SCHOOL BOARD OF WASHINGTON COUNTY, VIRGINIA, Appellee.**

**No. 80–1059.**

United States Court of Appeals, Fourth Circuit.

Argued Aug. 20, 1980.

Decided Sept. 18, 1980.

Richard M. Thomas, Roanoke, Va. (William B. Poff, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., on brief), for appellant.

William W. Eskridge, Abingdon, Va. (Wade W. Massie, Penn, Stuart, Eskridge & Jones, Abingdon, Va., on brief), for appellee.

Before RUSSELL, WIDENER and PHILLIPS, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

On this interlocutory appeal defendant GAF Corporation challenges the district court's determination that plaintiff School Board properly invoked the provisions of Virginia's Unauthorized Insurers Process Act, Va.Code § 38.1–63 *et seq.*, in serving process on defendant in this diversity action. We conclude that the Act is not applicable to GAF, reverse and remand to the district court, 478 F.Supp. 44, with instructions to quash the service of process.

## I

GAF, a Delaware corporation registered to do business in Virginia, contracted with the School Board to supply roofing materials to contractors constructing two schools. The contracts contained a guarantee in which GAF agreed to repair damage to the roofing membrane and base flashing resulting from leaks caused by natural deterioration of the roofing membrane or base flashing, blisters, bare spots, fish mouths, ridges, splits not caused by structural failure, buckles and wrinkles, thermal shock, gravel stop breaks, plastic pans, workmanship in applying the membrane and base flashing, and slippage of the GAF products. The guarantee excluded leaks caused by natural disasters, structural defects, damage to the building and certain other events unrelated to any defect in GAF's products.

Contending that GAF failed to repair leaks, the School Board brought this diversity action against GAF and effected service of process under the Unauthorized Insurers Process Act[1] on the theory that the guarantee constituted a contract of insurance. GAF contended that the guarantee was a warranty of its products and not a contract of insurance. The district court concluded

---

1. GAF maintains a registered agent in Virginia upon whom process may be served as provided in Va.Code §§ 13.1–272, –274, but the School Board chose instead to proceed under the Unauthorized Insurers Process Act by having process served under its special procedures upon the Clerk of the State Corporation Commission. The reasons for this choice of modes of service is explained in the text of this opinion.

that the guarantee was a contract of insurance, and GAF was, therefore, an insurer under Virginia's statutory scheme. Because GAF was not an authorized insurer in Virginia, service of process under the Act was held to be valid. The district court certified an interlocutory appeal under 28 U.S.C. § 1292(b).

## II

Virginia extensively regulates insurance companies doing business within its borders. Insurers are required to obtain a license from the State Corporation Commission before transacting business in the state. Va. Code § 38.1–85. The Unauthorized Insurers Process Act provides a procedure for service of process on unlicensed insurance companies and requires such an insurer when sued under the Act to post a bond in an amount sufficient to secure any final judgment that might be rendered against it before a responsive pleading may be filed. *Id.* § 38.1–69. The Act allows attorneys' fees to be awarded to a prevailing plaintiff under some circumstances. *Id.* § 38.1–70. The School Board candidly concedes that it sought to effect service under these procedures solely to obtain these collateral benefits.

As noted by the district court, no reported Virginia case has squarely addressed the distinction to be made between a contract of insurance and a warranty accompanying the sale of goods. We therefore address the state law issue unaided by state court interpretation of this "jurisdictional–process" statute which incorporates the problem, or by state court consideration of the question in other contexts.[2] In these circumstances we can only seek the rule of decision by resort to the usual sources to divine what the state's highest court would take as its rule. *See Kline v. Wheels by Kinney, Inc.,* 464 F.2d 184 (4th Cir. 1972).

We conclude that looking to general authorities, considering the practical implications of the rule contended for by the School Board, and applying basic canons of statutory construction, the state court would construe the Act to be inapplicable to the defendant on the facts of this case and accordingly, so hold.

Although "insurance company" is defined as "any company engaged in the business of making contracts of insurance," Va.Code § 38.1–1(8), "insurance contract" is not statutorily defined. In the absence of case law or statutory definition, the district court analyzed the exclusions and inclusions in the policy and applied the principle that a warranty covers defects in the article sold while insurance indemnifies against damage from perils outside the article. Because the guarantee covered leaks caused by faulty workmanship, a peril unrelated to defects in the articles sold, the court held the contract to be one of insurance.

The question whether contracts for sale of goods or for service containing "guarantees" are insurance contracts or warranties arises in a variety of contexts and is a difficult one because these contracts involve the transfer and distribution of risk, which are two elements of insurance. *See* R. Keeton, *Insurance Law* § 8.2(c) (1971). Although, as the district court rightly emphasized, the guarantee here possesses some characteristics of insurance, we think that this does not sufficiently address the underlying question and that the guarantee must be viewed as a whole in determining whether it constitutes a contract of insurance or a warranty.

The guarantee does contain an "insurance" component because the risk of damage from leaks caused by faulty workmanship was transferred to GAF. This element of risk transference, however, was a relatively unimportant element of the transac-

---

**2.** There may be an interesting conceptual problem whether the dispositive question is one that goes to the "merits" of the action (bond and attorney fee consequences) or whether it is "jurisdictional" and whether, if the latter, it pertains to amenability of the defendant to jurisdiction or to the adequacy of the state method

of service employed under Fed.R.Civ.P. 4(e). We need not explore this since state law controls in any event. *See* C. Wright, *Federal Courts* § 64, at 303–04 (3d ed. 1976). It is conceded, *see* note 1 *supra,* that the defendant is generally amenable under Virginia's corporation long–arm statute.

tion and is incidental to the essential character of the guarantee, which is that of a warranty agreement accompanying the sale of goods. *See* R. Keeton, *supra*, at 552. We think that the appropriate rule is that a small element of "insurance" should not be construed to bring a transaction within the reach of the insurance regulatory laws unless the transaction involves "one or more of the evils at which the regulatory statutes were aimed" and the elements of risk transfer and distribution give the transaction its distinctive character. *See id.* We believe that this is the rule that would commend itself to the highest state court and accordingly provides our rule of decision.

GAF guaranteed to repair leaks caused by defects in its products and, incidentally, to repair leaks caused by faulty workmanship. The workmanship guarantee is incidental to the warranty against defects in the products sold. Viewed as a whole under the rule we think proper, the warranty is not a contract of insurance. GAF is, therefore, not an unauthorized insurer and is not amenable to service under the Unauthorized Insurers Process Act.

We remand to the district court with instructions to quash the service of process.

*REVERSED AND REMANDED.*