**Angel RAYOS, Appellant,**

v.

**CHRYSLER CREDIT CORPORATION, Appellee.**

No. 08–84–00248–CV.

Court of Appeals of Texas, El Paso.

Jan. 16, 1985.

Rehearing Denied Feb. 13, 1985.

Al Melendez, El Paso, for appellant.

Temple B. Ingram, Jr., Studdard, Melby, Schwartz, Crowson & Parrish, El Paso, for appellee.

Before WARD, OSBORN and SCHULTE, JJ.

OPINION

OSBORN, Justice.

This appeal from a summary judgment involves the meaning of the words "vehicle insurance" in an automobile retail installment contract. We conclude that the Appellee has failed to meet its burden to

establish that an automobile extended service plan is vehicle insurance. We reverse and remand.

On May 11, 1983, Angel Rayos purchased a new Dodge Aries automobile from Airway Dodge, Inc. and signed a retail installment contract which provided for forty-eight monthly payments of $242.79 each. Included in the total amount financed was $495.00 paid to Chrysler Corporation for its extended service plan. This provided an extended service plan on the vehicle for five years or 50,000 miles. After being notified the service plan was effective, Mr. Rayos requested cancellation of the service plan. On July 18, 1983, Chrysler Service Contract Company wrote to Mr. Rayos that the protection plan contract had been cancelled and a check sent to the dealer. He endorsed the check made payable to him and Chrysler Credit for $495.00, and it was his intention that the check be applied to his monthly payments for August and September with Chrysler Credit. Instead, Chrysler Credit applied the payments as a credit to the last two installments due under his retail installment contract. In October, the car was repossessed because of a default in making the August and September payments. Rayos then filed this suit for conversion of his automobile.

The sole question on this appeal is whether Chrysler Credit Corporation was authorized to credit the $495.00 check to the last two installments under the retail installment contract, in which event there was a default authorizing a repossession, or whether the check should have been credited to the next two payments becoming due, in which event there would have been no default.

■ Chrysler Credit, the moving party in the summary judgment proceeding, was required to establish at least one element necessary to plaintiff's cause of action did not exist, or establish as a matter of law a defense to the alleged cause of action. *Menchaca v. Menchaca,* 679 S.W.2d 176 (Tex.App.—El Paso 1984, no writ); *Mostek Corporation v. Chemetron Corporation,* 642 S.W.2d 20 (Tex.App.—Dallas 1982, no writ). In this case, Chrysler was required to show a default which authorized the repossession of the vehicle, and the question of default turns upon when the check for $495.00 was required to be credited on the installment contract.

■ The installment contract provides in paragraph G of the "Additional Terms and Conditions:"

Buyer agrees to keep the property insured at Buyer's expense against substantial risk of damage, destruction, or loss for so long as any amount remains unpaid on this contract, with loss payable to the Creditor as its interest may appear, and that Buyer will deliver all such insurance policies upon receipt to the holder of this contract. Buyer shall not be relieved of the obligation to procure and maintain vehicle insurance due to the inclusion of same in this contract, but such inclusion only authorizes Creditor to attempt to obtain such insurance on Buyer's behalf through an authorized insurance agent. If Creditor fails to procure such insurance, the amount so included in the Total of Payments payable hereunder shall be credited to the last maturing instalments hereunder in inverse order of maturity, except to the extent applied by Creditor toward payment for comparable insurance protecting the interest of Buyer and Creditor or Creditor only. Upon cancellation or other termination of any vehicle insurance, the refund of premiums received by Creditor will be credited or applied in a like manner.

We hold Appellee has failed to establish that "any vehicle insurance" in the last quoted sentence of the installment contract includes the Chrysler Protection Plan which provided the five year-50,000 mile extended service.

There has been no evidence presented that Chrysler Service Contract Company is authorized to write insurance in the State of Texas. There is no proof in the record

548

that a policy of insurance was issued to Appellant. The record contains a letter to Mr. Rayos advising that he was covered by the Chrysler Corporation Protection Plan. The "ownercard" and "Plan Provisions" are not in the record. Certainly the letter to Mr. Rayos is not an insurance policy.

■ The letter forwarding the provisions of the protection plan would seem to indicate that the plan requires service from a Chrysler Corporation Dealer and the plan may be more in the nature of a warranty to repair certain defects than an insurance policy which undertakes to pay a sum of money upon certain conditions. Warranties are not considered contracts of insurance although they may contain all the essential elements of an insurance contract. *GAF Corporation v. County School Board of Washington County, Virginia,* 629 F.2d 981 (4th Cir.1980). In *Transportation Guarantee Co. v. Jellins,* 29 Cal.2d 242, 174 P.2d 625 (1946), the court concluded that the question is whether looking at the plan of operation as a whole, "service" rather than "indemnity" is the principal object and purpose of the agreement. Under that test, we believe a five year-50,000 mile owner protection plan to be effectuated by certain authorized dealers is one to provide a "service."

■ Basically, a warranty is issued to provide protection against defects or failures in a product, whereas an insurance policy is issued to provide reimbursement or indemnity based on an accident or occurrence unrelated to any defect or failure in the product. An owner protection plan would seem to be more in the nature of a warranty rather than being in the nature of insurance. Since Appellee has failed to meet its burden to establish that the check which was endorsed to it was a refund for "vehicle insurance," we sustain Appellant's Point of Error No. One.

The judgment of the trial court is reversed and the cause is remanded to the trial court.