**J & C DRILLING CO. and Javier Guillermo Gonzales, Appellants,**

v.

**Roman SALAIZ and Alejandro Garza, Appellees.**

No. 04–92–00332–CV.

Court of Appeals of Texas, San Antonio.

March 24, 1993.

Rehearing Denied June 18, 1993.

Hugh Lowe, Robert M. Roller, Graves, Doughtery, Hearon & Moody, Thomas I. Davies, Austin, W. Wendell Hall, Fulbright & Jaworski, San Antonio, for appellants.

Steve T. Hastings, Albert Huerta, Rose Rivera Vela, Allison & Huerta, Corpus Christi, for appellees.

Before BUTTS, PEEPLES and CARR,[1] JJ.

## OPINION

BUTTS, Justice.

This is a personal injury case arising out of an automobile accident. The trial court entered judgment upon a jury verdict against appellants J & C Drilling Co. (J & C) and Javier Gonzales, jointly and severally, in favor of appellee Roman Salaiz in the amount of $141,732.69 and in favor of appellee Alejandro Garza in the amount of $3,438,630.24. J & C and Gonzales raise fifteen points of error, complaining of (1) the disjunctive wording of certain jury questions; (2) the sufficiency of the evidence; (3) the filing of a post-verdict trial amendment; (4) the award of prejudgment interest; and (5) the failure to award contribution from Salaiz. We reverse and render as to J & C, and reverse and remand as to Gonzales.

### I. FACTS

Salaiz and Garza were driving home to Alice, Texas from a party in Rosita at approximately 2:00 in the morning. Salaiz was driving and Garza was preparing to get some sleep. Salaiz noticed a car some distance away coming toward him and swerving into his lane. Salaiz pulled onto the shoulder, continued to drive at 40–45 m.p.h., and alert-

1. Justice Ron Carr not participating.

ed Garza to the oncoming car. Garza grabbed the steering wheel and turned it to the left. Salaiz was continuing the turn to the left into the other lane of traffic when the accident occurred.

Gonzales, the driver of the other car, was employed by J & C Drilling Co. as a tool pusher. He had been working on a well site near Rosita. The well site had been shut down and the rig released at approximately 12:00 or 12:30 on the morning of the accident. Operations were discontinued and the rig was to be moved the next morning. Gonzales left the site at 1:00 a.m. and went to Alice to eat. He fell asleep while driving back to the well site. He awoke to see the headlights of appellees' truck coming toward him. He stepped on the brakes and swerved to the right to return to his lane, but Salaiz also turned in that direction and the two cars collided near the center line.

## II. RESPONDEAT SUPERIOR

Appellants do not contest the sufficiency of the evidence showing that Gonzales was negligent in causing the accident. The threshold issue we must determine, then, is whether J & C can be held liable for the negligence of Gonzales under the theory of respondeat superior. In point of error seven, appellants contend that the court erred in overruling their motion for new trial and in rendering judgment against J & C based on respondeat superior because appellees did not submit any jury questions necessarily referable to that theory and therefore abandoned that theory of recovery. In point of error eight, appellants contend that the evidence was legally and factually insufficient to support a finding that Gonzales was acting in the course and scope of his employment at the time of the accident. Appellees respond that (1) the issue of course and scope was not contested; (2) course and scope was conclusively established; and (3) the court made a deemed finding that Gonzales was in the course and scope of his employment.

■ We reject appellees' contention that the issue of course and scope was not contested. Appellants' answer contained a general denial, which put in issue all of the allegations of appellees' petition, including the allegation that Gonzales was acting in the course and scope of his employment with J & C. See TEX.R.CIV.P. 92. Because appellees had the burden of proof on this issue, it was not necessary for appellants to present evidence negating course and scope in order to contest the issue. In any event, as is discussed below, evidence was presented that Gonzales was on a personal errand at the time of the accident, refuting the allegation that he was acting in the course and scope of his employment.

We now consider whether recovery under respondeat superior can be supported in the absence of a jury finding that Gonzales was acting in the course and scope of his employment. Rule 279 of the rules of civil procedure provides that if no element of an independent ground of recovery or defense is requested or submitted, that independent ground is waived unless it is conclusively established. TEX.R.CIV.P. 279. If one or more elements of the ground of recovery or defense are omitted, but one or more elements necessarily referable to that independent ground are submitted and found by the jury, the trial court may make a finding on the omitted elements if such a finding is supported by factually sufficient evidence. *Id.* If the court does not make any written findings, "such omitted element or elements shall be deemed found by the court in such manner as to support the judgment." *Id.; see Ramos v. Frito–Lay, Inc.,* 784 S.W.2d 667, 668 (Tex.1990) (deem finding if supported by some evidence).

■ J & C urges that the court could not make a deemed finding because appellees did not submit any questions necessarily referable to the theory of respondeat superior, as distinguished from their independent theory of negligence against J & C. We agree. "A trial court is not authorized to make findings of fact pursuant to rule 279 when the omitted issue is an independent ground of recovery and no issues referable to it were submitted to the jury." *Tribble & Stephens Co. v. Consolidated Services, Inc.,* 744 S.W.2d 945, 951 (Tex.App.—San Antonio 1987, writ denied), *citing Martin v. McKee Realtors, Inc.,* 663 S.W.2d 446, 448 (Tex. 1984); *Glens Falls Ins. Co. v. Peters,* 386

S.W.2d 529, 531 (Tex.1965). Similarly, an appellate court cannot make deemed findings on an omitted independent ground of recovery. In the present case neither the issue of course and scope, nor any other issue necessarily referable to respondeat superior was submitted. Where no element of a ground of recovery and no element necessarily referable to a ground of recovery is submitted, the ground of recovery is waived, and the opposing party need not object in order to preserve error. TEX.R.CIV.P. 279; *Harmes v. Arklatex Corp.*, 615 S.W.2d 177, 179 (Tex. 1981).

■ Under the provisions of rule 279, "an independent ground of recovery or defense not conclusively established by the evidence is waived if no issue thereon is given or requested." *Harmes v. Arklatex Corp.*, 615 S.W.2d at 177. The proper method of complaining of the omission of a party's own questions—those on which he relies—is by requesting the submission of such questions in substantially correct wording. Accordingly, to avoid waiver as to an independent ground of recovery, the plaintiff must tender questions thereon in substantially correct form. 34 G. HODGES & R. GUY, THE JURY CHARGE IN TEXAS CIVIL LITIGATION, § 152 (Texas Practice 1988). Thus J & C and Gonzales, who did not bear the burden of persuasion, had no need to object to the omission and did not waive the error, which was properly preserved by post-verdict motions.

The only liability issues submitted in reference to appellees' claims against J & C were question one (asking whether the negligence, if any, of Gonzales or J & C proximately caused the accident), question two (asking the jury to apportion the percentage of negligence), and question three (asking whether Gonzales or J & C was grossly negligent). As each of these questions may have been submitted in support of appellees' independent theory of recovery against J & C (as discussed in detail below), none of them is necessarily referable to the ground of recovery based on respondeat superior. Because appellees failed to submit any element necessarily referable to respondeat superior, the court could not make a deemed finding of course and scope of employment. *See* TEX. R.CIV.P. 279. That theory of recovery was waived unless it was conclusively established. *Id.*

■ "[I]n order to render the master liable for an act of his servant, the act must be committed within the scope of the general authority of the servant in furtherance of the master's business and for the accomplishment of the object for which the servant is employed." *Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 357 (Tex.1971). An employer is liable for the negligent acts of its employee only if, on the occasion in question, the employer had "the right and power to direct and control the [employee] in the performance of the causal act or omission at the very instance of its occurrence." *Wilson v. H.E. Butt Grocery Co.*, 758 S.W.2d 904, 907 (Tex.App.—Corpus Christi 1988, no writ); *see also London v. Texas Power & Light Co.*, 620 S.W.2d 718, 720 (Tex.Civ. App.—Dallas 1981, no writ).

■ It is the general rule that use of public streets or highways in going to or returning from one's place of employment is not within the scope of one's employment. *American Gen. Ins. Co. v. Coleman*, 157 Tex. 377, 303 S.W.2d 370, 374 (1957) (workers' compensation case). An exception to this rule is when the employee "undertakes a special mission at the direction of his employer, or performs a service in furtherance of his employer's business with the express or implied approval of his employer." *Id.* When the employer does not require any particular route, the employee is not engaged in the furtherance of the employer's business. *Wilson v. H.E. Butt Grocery Co.*, 758 S.W.2d at 907; *accord London v. Texas Power & Light Co.*, 620 S.W.2d at 720.

There is no dispute in the present case that, at the time of the accident, Gonzales was an employee of J & C, he was on 24-hour call, he was driving a company car, and he was returning to the rig site after driving to Alice to eat.

■ When it is proved that the vehicle involved in an accident was owned by the defendant and the driver was an employee of the defendant, "a presumption arises that the

driver was acting within the scope of his employment when the accident occurred." *Robertson Tank Lines, Inc. v. Van Cleave,* 468 S.W.2d at 357. The presumption prevails when it is unrefuted. *Id.* Where, however, there is evidence that the driver was on a personal errand when the collision occurred, ownership of the vehicle and the fact that the driver was an employee of the defendant are insufficient to raise the issue of course and scope of employment. *Id.* at 358. The presumption vanishes "when positive evidence to the contrary is introduced." *Id.* (quoting *Houston News Co. v. Shavers,* 64 S.W.2d 384, 386 (Tex.Civ.App.—Waco 1933, writ ref'd)). At that time, the burden is on the plaintiff to produce other evidence that the driver was in the course and scope of his employment. *Id.*

In the present case, the evidence that Gonzales was an employee of J & C and that J & C owned the car involved in the collision raised a presumption that Gonzales was in the course and scope of his employment at the time of the accident. Other undisputed evidence showed, however, that prior to the accident J & C's well site was shut down and Gonzales left the site to get something to eat in another town. The accident occurred as he was returning from this personal errand. While there is evidence that at some point during this trip Gonzales had picked up two of his "hands," there is no evidence that he did so at the direction of or for the benefit of J & C, and he was not transporting those employees at the time of the accident. Appellants were not required to prove as a matter of law that Gonzales was not within the course and scope of his employment in order to refute the presumption. *See Robertson Tank Lines, Inc. v. Van Cleave,* 468 S.W.2d at 359. The evidence that Gonzales was on a personal errand at the time of the accident was sufficient for that purpose. When that evidence was introduced, the presumption vanished and it was then appellees' burden to introduce further positive evidence of course and scope. *Id.* at 358.

The only other evidence in our record bearing on the issue of course and scope is the fact that Gonzales's position with J & C required that he be on 24–hour call. That fact is not sufficient to raise an issue of course and scope. *See Smith v. Garza,* 432 S.W.2d 142, 144 (Tex.Civ.App.—Houston [1st Dist.] 1968, no writ); *Thomas v. Travelers Ins. Co.,* 423 S.W.2d 359, 360–61 (Tex.Civ. App.—El Paso 1967, writ ref'd).

> [E]ven if an employee is on call 24–hours a day ... he is not relieved from making the additional showing that he was injured while engaged in or about the furtherance of his employer's business or affairs.

*Vernon v. City of Dallas,* 638 S.W.2d 5, 9–10 (Tex.App.—Dallas 1982, writ ref'd n.r.e.).

*Thomas* involved a situation similar to that presented in the case at bar. The decedent in *Thomas* was a tool pusher who died in a fire in his trailer home. His widow argued that he died while in the course and scope of his employment because he was on 24–hour call. The court upheld an instructed verdict for the defendant, in part because the mere fact that an employee is on 24–hour call does not constitute any evidence that he was acting in the course and scope of his employment. The court distinguished *Texas Employers Ins. Ass'n v. Monroe,* 216 S.W.2d 659 (Tex.Civ.App.—Galveston 1948, writ ref'd n.r.e.), which also involved the death of a tool pusher. There was evidence in *Monroe* that the decedent was on continuous *duty,* 24 hours per day. In *Thomas,* there was evidence that the decedent was on call, but was free to carry on his own business when not actually on duty.

The present case is more similar to *Thomas* than *Monroe.* J & C's general manager testified that Gonzales was on 24–hour call, but that he was not required to be on-site 24 hours per day and he could go home as long as he remained in telephone or radio communication. The mere fact that Gonzales was on call was not sufficient to raise a fact issue concerning whether Gonzales was in the course and scope of his employment at the time of the accident, and appellees did not introduce any evidence showing that Gonzales was engaged in the furtherance of J & C's business. *See Vernon v. City of Dallas,* 638 S.W.2d at 10.

In conclusion, appellees not only did not conclusively establish that Gonzales was acting in the course and scope of his employment at the time of the accident, they failed to raise a fact issue. The only factors linking Gonzales to J & C at the time of the accident were that he was J & C's employee, J & C owned the car, and he was on 24–hour call. Once the presumption is refuted, proof that the defendant owned the vehicle and the driver was employed by the defendant, absent other affirmative evidence, does not constitute probative evidence that the driver was acting within the course and scope of his employment and will not support the submission of a jury question on that issue. *Robertson Tank Lines, Inc. v. Van Cleave,* 468 S.W.2d at 358. The mere fact that Gonzales was on 24–hour call is not affirmative evidence that he was acting within the course and scope of his employment. There is no evidence that Gonzales was on a special mission for J & C, that he was performing any service in furtherance of J & C's business, that J & C directed his manner of transportation or his route, or that J & C had the right and the power to direct Gonzales in his driving at the time of the accident. *See Robertson Tank Lines, Inc. v. Van Cleave,* 468 S.W.2d at 357; *American Gen. Ins. Co. v. Coleman,* 303 S.W.2d at 374; *Wilson v. H.E. Butt Grocery Co.,* 758 S.W.2d at 907. Rather, the evidence is undisputed that Gonzales drove to Alice for dinner and was returning to the well site, which had been shut down, when the collision occurred.

Because appellees did not submit any questions necessarily referable to recovery under respondeat superior, and because they did not conclusively establish or even raise a fact issue that Gonzales was acting in the course and scope of his employment, the judgment against J & C cannot rest on the theory of respondeat superior. *See* Tex. R.Civ.P. 279. Points of error seven and eight are sustained.

## III. NEGLIGENCE OF J & C DRILLING COMPANY

We now consider the sufficiency of the evidence to support the independent theory of negligence asserted against J & C. In point of error six, appellants contend that the evidence is legally and factually insufficient to support findings that J & C was negligent or grossly negligent.[2] Appellees contended that J & C was negligent because it did not provide Gonzales with relief and did not have written guidelines on when to call for relief or how long to rest before driving the company car.

As noted above, Gonzales was on call 24 hours per day. He testified that he had only short cat-naps in the day-and-a-half preceding the accident. Garza and Salaiz testified that Gonzales told them at the accident site that he hadn't slept in 2 or 3 days. Appellees' expert witness testified that J & C's lack of written procedures or guidelines was "totally unacceptable from a safety standpoint" and that if the company required an employee to drive on a public road, it was essential that it allow the employee regularly scheduled rest periods or days off. He stated that a reasonably prudent employer would ensure that its employees had a minimum amount of sleep before driving. He opined that J & C was negligent and grossly negligent.

*Moore v. Times Herald Printing Co.,* 762 S.W.2d 933 (Tex.App.—Dallas 1988, no writ), is directly on point. In that case, Moore sued The Times Herald for injuries sustained in an automobile collision with Davis, a Times Herald employee. Davis was on call 24 hours per day and had worked approximately 20 hours on the day of the accident. After leaving work, he apparently fell asleep at the wheel of his car and collided with Moore. Moore alleged that The Times Herald was

---

**2.** In considering a "no evidence" or legal sufficiency point, we consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). In considering a factual sufficiency point, we assess all the evidence and reverse for a new trial only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

negligent in allowing its employee "to be a risk to others traveling on the highway." *Id.* at 934.

■ The Dallas court noted that, under the holding of the supreme court in *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307 (Tex. 1983), an employer owes a duty to third parties when

> because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others.

*Moore v. Times Herald Printing Co.,* 762 S.W.2d at 934 (quoting *Otis Eng'g Corp. v. Clark,* 668 S.W.2d at 311). In other words, for a duty to third persons to arise, the employer must perform some affirmative act of control over the incapacitated employee. *Moore,* 762 S.W.2d at 934; *Williams v. Sun Valley Hosp.,* 723 S.W.2d 783, 787 (Tex. App.—El Paso 1987, writ ref'd n.r.e.); *Pinkham v. Apple Computer, Inc.,* 699 S.W.2d 387, 390 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.). The court in *Moore* held that because there was no evidence of any affirmative action by The Times Herald to control Davis's actions, summary judgment was properly granted for the employer. *Moore,* 762 S.W.2d at 934–35.

In the present case, there is no evidence that J & C took any affirmative action to put Gonzales on the public highway in his fatigued state. On the contrary, there is evidence that J & C provided a trailer containing a kitchen and a bed for Gonzales's use at the well site. As discussed above, J & C did not direct Gonzales to leave the well site for dinner or control the manner in which he left or returned to the site.

The testimony of appellees' expert was not competent to create a duty where none existed at law. This is particularly so considering the assumption by the expert that J & C *required* Gonzales to drive on the public highways.[3] The assumption is apparent in the expert's discussion of what he took to be an analogous situation—that truck drivers and airplane pilots have written guidelines concerning the amount of sleep they must have before they can operate a truck or airplane. Truck drivers and airplane pilots, by the very nature of their jobs, are required by their employers to operate vehicles in public places. In the present case, there is no evidence that J & C required or directed Gonzales to drive on the public highway, particularly on the occasion in question when he was returning from going to get something to eat.

Appellees failed to produce any evidence that J & C took any affirmative action to control Gonzales or place him on the public highway; J & C owed no duty to persons using the public highway to prevent Gonzales from driving. Point of error six is sustained.

## IV. GROSS NEGLIGENCE OF GONZALES

■ In point of error nine, appellants contend that the evidence was legally and factually insufficient to support a finding that Gonzales was grossly negligent. Gross negligence is "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 920 (Tex.1981); *see also Williams v. Steves Indus., Inc.,* 699 S.W.2d 570, 572 (Tex.1985).

---

3. The following exchange occurred during appellees' direct examination of their expert:

> Q And have you reached an opinion in this case and have I asked you to address the procedures and conduct of J & C Drilling Company in this matter and their dealing with their employees?
> A Uh, yes, you have.
> Q And what is that opinion?
> A Well, in my opinion the procedures that they had ... they had no written procedures or

> written guidelines, ..., so that was totally unacceptable from a safety standpoint ... when you have workers and specially [sic] workers where you are going to *require* them to drive an automobile or a truck, any kind of a vehicle on public roads, as well as operating on equipment, ..., it is absolutely essential that you allow them to have some sort of scheduled regular work rest periods or some days off ....

(Emphasis added.)

What distinguishes gross negligence from negligence is the defendant's state of mind. *Burk Royalty Co.*, 616 S.W.2d at 922; *Williams*, 699 S.W.2d at 573. Such mental state may be inferred from the defendant's actions. *Burk Royalty Co.*, 616 S.W.2d at 922; *Williams*, 699 S.W.2d at 573.

The evidence relating to Gonzales's conduct or state of mind at the time of the accident was that, knowing he had not slept in at least a day-and-a-half (and possibly as long as two or three days) prior to the accident and that he could have remained at the well site to rest in the trailer provided by J & C, Gonzales chose to drive to Alice to eat and fell asleep while driving back to the well site at 2:00 in the morning. The jury could infer from this evidence that Gonzales disregarded the well-known dangers of driving while exhausted and that his acts and omissions were the result of a conscious indifference to the rights or welfare of other persons on the highway, including appellees. The evidence of gross negligence was legally and factually sufficient. Point of error nine is overruled.

## V. DISJUNCTIVE SUBMISSION OF JURY QUESTIONS

In points of error one through five, appellants complain that the jury charge was defective because questions one (negligence), two (percentage of fault), three (gross negligence), six (exemplary damages for Garza), and seven (exemplary damages for Salaiz) were submitted in the disjunctive. For example, question one read,

Did the negligence, if any, of those named below proximately cause the occurrence in question?

Answer "Yes" or "No" for each of the following:

a. Javier Guillermo Gonzales or J & C Drilling Company     Yes

b. Roman Salaiz      _____

Appellants urge that it cannot be determined from the answers to the disjunctive questions what the jury meant and, thus, the trial court had no basis upon which to render a proper judgment. For example, by its "Yes" answer to question one, the jury could have meant that Gonzales was negligent but J & C was not, or J & C was negligent but Gonzales was not, but not that both were negligent. Thus, there is no basis for a joint and several judgment against both defendants, nor is there any basis for determining which defendant the jury meant to hold liable.

The error asserted is not that the jury questions themselves were defective, but that the answers to those questions do not afford a reasonable basis upon which to enter a judgment, as illustrated above. Because the focus of the error asserted is on the judgment rather than the jury charge, error was properly preserved by J & C and Gonzales's supplemental motion for judgment notwithstanding the verdict and motions for new trial.[4]

In this regard, the case at bar is analogous to *Lovelace v. Sabine Consol., Inc.*, 733 S.W.2d 648 (Tex.App.—Houston [14th Dist.] 1987, writ denied). The damage question submitted to the jury in *Lovelace* did not separate damages for breach of contract and damages for tort. Appellant did not object to the charge, but complained on appeal that the award of punitive damages could not stand because there were no identifiable damages for tort. The court stated,

As for the contention of Sabine that Lovelace waived complaint by failing to object at trial to the submission of the form of the damages issues, Sabine mistakes where the duty to submit separate jury findings on damages lies. An appellant cannot be held accountable for the failure of an appellee to secure separate jury findings upon which an accurate judgment could be based. *Lucas v. Nesbitt*, 653 S.W.2d 883, 887 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). Nor can an appellate court imply a finding of actual damages in tort,

---

4. Appellees assert that J & C and Gonzales cannot complain of the disjunctive submission because they requested the charge as given. There is no support in our record for this assertion, and appellants deny that they requested the charge. Further, appellees had the burden of proof on these issues.

because a court of appeals cannot make original findings of fact; it can only "unfind" facts.

*Id.* at 655.

Similarly, in the present case, J & C and Gonzales cannot be held accountable for appellees' failure to secure separate liability findings upon which an accurate judgment could be based. The failure to object at trial does not waive this error.

Appellees contend that the charge was proper because they relied on the theory of respondeat superior. Even if this omitted theory had been submitted properly, this would not cure the ambiguity in the verdict. If Gonzales was negligent and was acting in the course and scope of his employment, and the jury intended to find Gonzales negligent, then J & C would be liable for that negligence. Thus, the verdict could support a joint and several judgment. If, however, the jury had intended to find that only J & C was at fault for working Gonzales too hard, that negligence would not be imputed to Gonzales. Respondeat superior, even when properly submitted, is not a two-way street. Thus, the verdict would not support a joint and several judgment. In any event, we have held above that appellees did not establish that J & C was liable under respondeat superior, or any other theory presented at trial. Therefore, the error here at issue affects only Gonzales.

The evidence clearly supports a finding that Gonzales was negligent, but the verdict does not clearly show that that is what the jury intended to find. "[N]either the trial court nor this court is permitted to speculate as to what the jury intended by an ambiguous answer which, because of its ambiguity, cannot constitute a proper basis for a judgment." *Cactus Drilling Co. v. Williams,* 525 S.W.2d 902, 907 (Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.); *accord Parker v. Keyser,* 540 S.W.2d 827, 830 (Tex.Civ.App.—Corpus Christi 1976, no writ). Even if we were able and willing to conclude that the jury must have intended to find Gonzales liable, there is no basis upon which to determine the extent of that liability. We cannot say that the jury's answer to question two, that J & C *or* Gonzales was 75% negligent, was not influenced by the allegations of negligence against J & C and that the jury would have given the same answer had it been asked to assess percentage of fault for Gonzales alone.

■ Ordinarily rule 279 permits findings of fact by the trial court on omitted elements of a submitted ground of recovery. Here the submitted ground of recovery against Gonzales, the driver, was negligence. However, the trial court in this instance could not make a finding as to Gonzales' percentage of negligence, nor can this court deem one which would constitute a proper basis for a judgment. Even if we were to hold that Gonzales was negligent as a matter of law, we cannot attribute any particular percentage of responsibility to Gonzales as a matter of law. The assessment of percentage of fault is necessarily a question of fact, and this court is not authorized to find facts. *See Lovelace v. Sabine Consol., Inc.,* 733 S.W.2d at 655. Because the ambiguous verdict cannot constitute a proper basis for judgment, the judgment against Gonzales must be reversed. Points of error one through five are sustained.

## VI. DAMAGES, TRIAL AMENDMENT, PREJUDGMENT INTEREST, PRE–SUIT NOTICE OF CLAIM, AND CONTRIBUTION

Because this judgment must be reversed and rendered as to J & C Drilling Co. and reversed and remanded to the trial court as to Gonzales, we need not address the merits of points of error ten (damages), eleven (trial amendment), twelve and thirteen (prejudgment interest on future damages), fourteen (pre-suit notice of claim), or fifteen (contribution from Salaiz).

## VII. CONCLUSION

The judgment against J & C Drilling Company is reversed and judgment is rendered that Roman Salaiz and Alejandro Garza take nothing of J & C Drilling Company; the judgment against Javier Gonzales is reversed and the cause is remanded to the trial court

for further proceedings. All costs of appeal are assessed against appellees.